# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

BRIAN RUSSELL LOCKE,
       Petitioner,

v.                                                             Case No. 11-CV-00364

MICHAEL BAENAN, Warden,
Green Bay Correctional Institution,
       Respondent.

## DECISION AND ORDER

Petitioner Brian Locke filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting that his state court conviction and sentence were imposed in violation of the Constitution. He has multiple convictions, but he challenges his 2005 conviction for assault by a prisoner under Wis. Stat. § 946.43(1m)(a). He was convicted in the Dodge County Circuit Court after he entered an *Alford* plea and sentenced to 5 years imprisonment to be followed by 5 years extended supervision. He is currently incarcerated at Green Bay Correctional Institution.

## I. BACKGROUND

On April 8, 2004, petitioner was an inmate at Fox Lake Correctional Institution ("Fox Lake") when he physically attacked Housing Unit Sergeant Donald Baney. Petitioner admits that he struck Baney several times, but claims that he attacked Baney because Baney was acting aggressively towards him. Petitioner alleges that Baney moved towards him quickly and poked him in the chest. While he admits his reaction to Baney's behavior was "overblown," he argues that he was easily provoked because shortly before the

incident the Wisconsin Department of Corrections ("DOC") had taken him off the medication he needs to treat his bipolar disorder. (Tr. of Hr'g on Mot. to Withdraw Plea 33–34, ECF No. 19-18.) As a result of this incident, the state brought four charges against petitioner: battery by a prisoner, attempted first degree intentional homicide, and two counts of assault by a prisoner.

In September 2004, the district attorney asked to take a video deposition of Baney to preserve his testimony for trial because Baney was dying of cancer. During this deposition, Baney testified that he believed there was a videotape of his altercation with petitioner because it is common practice at Fox Lake to conduct video surveillance of the housing units. Baney said he had not seen a videotape, but he believed one existed. After the deposition, petitioner claims the district attorney approached him and his public defender, Bill Mayer, and showed them a letter from the DOC stating that the videotape from that day had been taped over. Mayer did not take any action in response to this alleged disclosure.

Subsequently, in June 2005, the trial judge granted Mayer's motion to withdraw based on petitioner's statement that he no longer wanted Mayer to represent him. Petitioner claimed Mayer was not adequately prepared for trial, which was set for July 27, 2005. After Mayer withdrew, the judge asked petitioner about several pro se interrogatories he had addressed to Baney seeking information about the type of camera surveillance system used at Fox Lake and asking Baney what he had seen on the surveillance tapes prior to their destruction. The judge explained to petitioner that a criminal defendant is not generally allowed to serve interrogatories on state officials. Petitioner then informed the judge that he believed the state had destroyed a videotape of his fight with Baney, and he

was trying to learn more about the tape. He told the court that the video would have shown he acted in self-defense. The judge suggested that petitioner follow-up on the issue of the missing videotape once he had a new attorney to represent him.

The state public defender appointed Attorney John Fiske to replace Mayer, but, like Mayer, Fiske did not file any motions challenging the destruction of the videotape. Instead, on September 28, 2005, petitioner appeared and entered a change of plea. Petitioner had initially pled not guilty by reason of insanity ("NGI"), but the doctor the court appointed to assess his mental state had submitted a report that was not favorable to petitioner. As a result, he decided to change his plea and accept a plea bargain. In exchange for a plea to one count of assault by a prisoner, the state agreed to drop the other three charges against petitioner.

At the plea hearing, petitioner entered an *Alford* plea, which means he agreed to forego his right to a trial but maintained his innocence. *See N.C. v. Alford*, 400 U.S. 25, 37–38 (1970). The crime petitioner pled to has five elements: 1) defendant was an inmate or prisoner confined to a state prison; 2) the victim was an officer or employee of the institution; 3) defendant placed the victim in apprehension of an immediate battery likely to cause death or great bodily harm; 4) defendant intended to place the victim in apprehension of an immediate battery likely to cause death or great bodily harm; and 5) defendant knew the victim was an employee of the institution. *State v. Block*, 222 Wis. 2d 586, 595–96 (Ct. App. 1998). Petitioner admitted that four of the elements of the crime were satisfied, but denied that he had the requisite intent to commit the crime. However, he stated he wanted to waive his right to a trial because, "I don't want to put Mr.

3

Baney through any more heartache. He's dying of cancer. We can just move forward with this and argue in sentencing why I feel the way I do. But I'm doing it for two reasons: One for myself, and one for Mr. Baney." (Tr. of Plea Hr'g 10, ECF No. 19-16.) Petitioner also stated that he had reviewed the Guilty Plea Questionaire and that he was aware of the constitutional rights he was giving up.

The trial judge accepted the plea and set the sentencing hearing for January 9, 2006. He also ordered the DOC to prepare a pre-sentence investigation report ("PSI") and to submit it to the court by December 9, 2005. The PSI was duly submitted on December 9 and mailed out to the parties shortly thereafter. It recommended a maximum sentence of 12 ½ years, including 7 ½ years of initial confinement. On December 15, 2005, Fiske mailed petitioner a letter stating that he was disappointed to learn that petitioner had not cooperated with the author of the PSI and that, while he had not yet seen the PSI, he was concerned it might hurt petitioner's case at the sentencing hearing. The letter also informed petitioner that Fiske would not be able to write an expert opinion letter to help petitioner in an unrelated malpractice suit against one of petitioner's former public defenders, David Stokes. Fiske told petitioner that he had reviewed the materials in the Stokes case and he could see no way to support petitioner's claims.

Subsequently, on December 20, 2005, petitioner began submitting pro se motions to the court seeking to withdraw his plea and asking for Fiske to withdraw as his attorney. The trial judge allowed Fiske to withdraw finding that once again there had been an irreparable break down in communications between petitioner and his counsel. A new attorney, David Westrick, was appointed to replace Fiske. The court then held a hearing on petitioner's motion to withdraw his plea. At the hearing, petitioner testified that he

4

understood the terms of the plea bargain and that, while he had not actually read the Guilty Plea Questionaire, he was familiar with the contents of the form because he had been through the plea process several times. Nonetheless, he claimed he should be allowed to withdraw the plea because Fiske had coerced him into entering it.

First, petitioner claimed Fiske had falsely promised to contact two witnesses for the sentencing hearing. Petitioner wanted his reverend, Roy Ratcliffe, and one of his former doctors, Dr. Narinder Saini, to testify, but as of December 15, 2005 Fiske had not contacted either of them. Second, petitioner claimed Fiske had promised to provide an expert opinion letter in support of petitioner's malpractice suit if petitioner accepted the plea bargain. Fiske denied making such a promise. He testified that he had only promised to review the materials from the Stokes case to see if he could write such a letter. Third, petitioner claimed he felt he had no choice but to enter a plea because Fiske had refused to investigate the merits of the case and prepare for trial. Specifically, petitioner claimed Fiske had refused to investigate the missing videotape and the problems with petitioner's medication. However, petitioner immediately contradicted this testimony by stating that he had chosen not to go to trial because Fiske had promised to get the witnesses for the sentencing hearing and help with the Stokes case. He admitted that, if he had really wanted to go to trial and Fiske had tried to prevent him, he would have notified the court and asked Fiske to withdraw.

Relying on Wisconsin case law, the trial judge denied the motion to withdraw the plea, finding there was no fair and just reason for withdrawal. Wisconsin law allows a defendant to withdraw even a knowing and voluntary plea prior to sentencing as long as there is a "fair and just" reason for doing so. *State v. Garcia*, 192 Wis. 2d 845, 861–62

5

(1995). The trial judge found that Fiske's failure to keep his promise to contact Reverend Ratcliffe and Dr. Saini was not a ground for withdrawing the plea because there was still time to arrange for these witnesses to testify. He also found Fiske's testimony about petitioner's malpractice case credible. The judge noted, "It is absolutely incredible that Mr. Fiske would try to coerce the defendant to take a plea in this case, and especially incredible that Mr. Fiske would think of using the [malpractice case] as a means of coercion." (Mem. Decision and Order Den. Mot. to Withdraw Plea 13, ECF No. 19-6.) The judge found that the real reason petitioner was seeking to withdraw his plea was that he had a change of heart when he saw the PSI was recommending the maximum sentence.

After the hearing on the motion to withdraw the plea, Attorney Westrick asked to withdraw because petitioner was threatening to sue him for malpractice and asking him to file motions that had no merit. The trial judge granted Westrick's motion. Attorney Mary Harper was appointed to replace Westrick, and she represented petitioner at the sentencing hearing. After sentencing, Attorney Philip Brehm was appointed as appellate counsel, but petitioner asked Brehm to withdraw from the case too. Petitioner claimed Brehm was improperly refusing to provide petitioner with a free copy of the sentencing hearing transcript. Brehm informed the court that the copy in the public defender's file was petitioner's copy, and that the public defender would not make additional copies of court documents for a defendant unless the defendant paid the cost of copying. After learning about the dispute, the court supplied petitioner with the transcript he was seeking and granted Brehm's motion to withdraw. Attorney John Tedesco then took over petitioner's defense, but petitioner also asked Tedesco to withdraw. After allowing Tedesco to

6

withdraw, the trial judge found petitioner had voluntarily waived his right to counsel. As a result, petitioner was forced to proceed pro se.

On appeal, petitioner argued that his plea was invalid because he had received ineffective assistance of counsel, that the state had intentionally destroyed exculpatory evidence when it erased the Fox Lake surveillance tape, and that he had been denied his right to due process because the trial judge was biased against him. The Wisconsin Court of Appeals affirmed the denial of the motion to withdraw the plea. The court of appeals held, "Given the [trial] court's finding of Locke's real motive, we agree with the trial court that a desire to test the weight of potential punishment before going to trial does not provide a fair and just reason for plea withdrawal." *State v. Locke*, 329 Wis. 2d 271 (Ct. App. 2010) (unpublished decision). The court then found that by entering a plea petitioner had waived all non-jurisdictional challenges to his conviction, including his claim that the DOC had improperly destroyed the videotape of the incident. The court also refused to review petitioner's claim that the trial judge was improperly biased against him because the only evidence petitioner provided of bias were comments made by the judge at a post-conviction hearing on Attorney Tedesco's motion to withdraw. The court found that errors in post-conviction proceedings were "beyond the scope of the appeal, which is limited to matters which occurred before the judgment of conviction was entered." *Id.*

## II. DISCUSSION

I may grant habeas relief to a state prisoner under § 2254 only if a state court has had an adequate opportunity to resolve the prisoner's claims on the merits, and the state court's decision "was contrary to or an unreasonable application of clearly established

7

Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(b)(1)(A), 2254(d). After screening the petition under Rule 4 of the Rules Governing § 2254 Petitions, I allowed petitioner to proceed on four claims. I will address each of these claims in turn.

First, petitioner claims his plea was invalid because he received ineffective assistance of counsel. A guilty plea operates as a waiver of important rights and so it is valid only if entered voluntarily, knowingly and intelligently. *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005). A defendant may attack the voluntariness of a plea by claiming ineffective assistance of counsel. *Id.* at 186. To prevail, a defendant must show that counsel's advice regarding the plea was objectively unreasonable, and that there is a reasonable probability that, but for counsel's error, the defendant would not have plead guilty. *See Strickland v. Wash.*, 466 U.S. 668, 687–88 (1984).

The state court found Fiske had provided petitioner with effective assistance of counsel, and the state court's ruling was not contrary to clearly established federal law. Fiske's recommendation that petitioner accept the plea bargain was not objectively unreasonable. Petitioner admitted to striking Baney, there were several witnesses to the altercation, and Baney testified at his deposition that while attacking him petitioner repeatedly yelled, "I'm going to kill you're motherfuckin' ass." (Dep. Donald G. Baney 17, ECF No. 19-13.) While Fiske could have pursued the missing videotape or investigated the problems with petitioner's medication, petitioner admitted the tape would have shown him striking Baney, and Dr. Marshall had already submitted an unfavorable assessment of

8

petitioner's mental status in connection with the NGI plea. Thus, the only evidence of ineffective assistance of counsel is petitioner's testimony that Fiske coerced him into entering a plea by promising to help with petitioner's malpractice suit. The state court reasonably found this claim to be incredible. While it is possible petitioner accepted the plea bargain in an effort to seem cooperative and build goodwill with Fiske, that would not make his plea involuntary. Therefore, I will deny petitioner's request for habeas relief on the ground that he received ineffective assistance of counsel.

Second, petitioner claims his conviction is invalid because his due process rights were violated when the DOC destroyed the videotape from the prison security cameras. Due process requires the prosecution to preserve exculpatory evidence that comes into its possession so the defense may utilize it at trial. *Arizona v. Youngblood*, 488 U.S. 51, 57–58 (1988). The state court dismissed this claim because it found petitioner had waived it by knowingly and voluntarily entering an *Alford* plea. Again, I find the state court's ruling was consistent with clearly established federal law.[1]

Generally, an accused person who enters a voluntary and intelligent plea of guilty with the assistance of competent counsel does not have a constitutional right to collaterally

---

[1] Respondent claims I cannot review the state court's ruling on this claim because it was based on an adequate and independent state rule of procedure. *See Walker v. Martin*, 131 S. Ct. 1120, 1127 (2011). I disagree. The state court's ruling depended in part on its finding that petitioner had no federal constitutional right to challenge the destruction of the videotape after voluntarily entering a plea. If petitioner had such a right, the state court's ruling would have to be reversed. Thus, the state court's ruling was not independent of federal law. *See Stewart v. Smith*, 536 U.S. 856, 860 (2002) ("'[W]hen resolution of [a] state procedural law question depends on a federal constitutional ruling, the state-law prong of the court's holding is not independent of federal law . . . .'"); *see also U.S. v. Broce,* 488 U.S. 563, 575 (1989) (noting that a defendant who has entered a plea still has a constitutional right to challenge the jurisdiction of the court that entered the conviction).

9

attack his conviction. *Mabry v. Johnson*, 467 U.S. 504, 508 (1984). In *United States v. Ruiz*, the Supreme Court suggested that a defendant might have a constitutional right to challenge the validity of a plea if the state suppressed exculpatory evidence until after the plea hearing, but that right would not apply to this case. *See McCann v. Mangialardi*, 337 F.3d 782, 787–88 (7th Cir. 2003) (discussing *U.S. v. Ruiz*, 536 U.S. 622 (2002)). Petitioner claims the state notified him and his attorney about the destruction of the videotape long before the plea hearing. Therefore, petitioner had the opportunity to raise this due process claim before he entered his plea, but chose not to do so. Since I agree with the state court and find petitioner has no right to challenge the destruction of the tape, I will also deny petitioner's request for an evidentiary hearing on the merits of this claim.

Third, petitioner claims his due process rights were violated because the trial judge was biased against him and forced an invalid plea on him. *See Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997) ("[T]he Due Process Clause clearly requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or interest in the outcome of his particular case." (internal quotations and citations omitted)). It is not clear whether petitioner exhausted this claim in state court because the state court of appeals refused to review it on the ground that it was outside the scope of petitioner's appeal. However, I will deny it on the merits because there would be no point in requiring petitioner to return to state court for further litigation. *See Granberry v. Greer*, 481 U.S. 129, 134–35 (1987) (noting that it is appropriate for a court to dispose of nonmeritorious petitions without reaching the issue of nonexhaustion); *see also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the

10

applicant to exhaust the remedies available in the courts of the State."). Petitioner has not provided any evidence that would indicate the trial judge was biased against him. The transcript of the hearing on Attorney Tedesco's motion to withdraw does not contain any prejudicial statements by the court. In fact, the record on the whole shows that the trial judge was exceedingly patient with petitioner. Therefore, I will deny petitioner's request for habeas relief on this claim as well.

Finally, petitioner claims his due process rights were violated because his first appellate attorney, Attorney Brehm, refused to provide him with a copy of the transcript from his sentencing hearing unless petitioner paid for it. *See Griffin v. Illinois*, 351 U.S. 12, 18 (1956) (holding that an indigent defendant has a right to a free transcript on appeal). Petitioner did not present this claim to the state court, but I will deny it on the merits as well because it is clearly baseless. While petitioner's attorney did refuse to provide him with his own copy of the transcript from the sentencing hearing, the state court provided him with one as soon as he requested it. Thus, petitioner was not denied access to transcripts on the basis of his indigence. In fact, the state provided petitioner with two free copies of the sentencing hearing transcript, one for his attorney and one for himself.

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that petitioner's motion to add documents to the record [DOCKET #64] is **GRANTED**.

**IT IS FURTHER ORDERED** that petitioner's motion for an evidentiary hearing [DOCKET #44] is **DENIED**.

**IT IS FURTHER ORDERED** that the petition for a writ of habeas corpus is **DENIED**. The clerk shall enter final judgment. Pursuant to Rule 11 of the Rules Governing § 2254 Cases, I find that petitioner has not made the showing required by 28 U.S.C. § 2253(c)(2), and therefore I will not issue a certificate of appealability.

Dated at Milwaukee, Wisconsin, this 17th day of October 2012.

s/ Lynn Adelman
_____
LYNN ADELMAN
District Judge

12

Case 2:11-cv-00364-LA   Filed 10/17/12   Page 12 of 12   Document 65